939 P.2d 691 (1997)
132 Wash.2d 484
The STATE of Washington, Petitioner,
v.
Mark BLILIE, Respondent.
No. 64799-2.
Supreme Court of Washington, En Banc.
Argued April 8, 1997.
Decided July 3, 1997.
*692 Norm Maleng, King County Prosecutor, Brian McDonald, Deputy, Seattle, for Petitioner.
Michael A. Frost, Seattle, for Respondent.
The Defender Association, Jeffrey E. Ellis, Seattle, Amicus Curiae on Behalf of Washington Association of Criminal Defense.
JOHNSON, Justice.
In this case we are asked to decided whether RCW 10.64.025(2), which prohibits the release of persons convicted of sex offenses pending sentencing, is unconstitutional for violating the separation of powers doctrine of the Washington Constitution or the equal protection clause of the Fourteenth Amendment. We hold the statute was not enacted in violation of the separation of powers doctrine, nor does it violate the equal protection clause. The order of the trial court is reversed.

FACTS
On September 27, 1996, Mark Blilie, Respondent, was convicted by a jury of one count of communicating with a minor for immoral purposes, two counts of child molestation in the third degree, and one count of rape of a child in the third degree. Under RCW 10.64.025(2), Blilie was ordered committed to the King County Jail that same day. RCW 10.64.025(2) provides in pertinent part: "A defendant who has been found guilty of one of the following offenses shall be detained pending sentencing: ... rape of a child in the first, second, or third degree; [and] child molestation in the first, second, or third degree." Sentencing was set for November 8, 1996.
On October 15, 1996, Blilie filed a motion seeking an order granting his release or the setting of bail pending sentencing on the grounds RCW 10.64.025 "is unconstitutional and violative of Article IV, § 6 of the Washington State Constitution and Article I, § 14 of the Washington State Constitution." Clerk's Papers at 19-20. The trial court heard argument on the motion on October 29, 1996 and found RCW 10.64.025(2) unconstitutional on the grounds it violated the separation of powers doctrine. A written order to that effect was entered the same day. However, the trial court stayed the order pending emergency appellate review.
The State immediately filed a notice of discretionary review in Division One of the Court of Appeals. After reviewing the case, the Court of Appeals determined it involved an issue of broad public import requiring prompt and ultimate determination, and certified the following question to this court:
Does the 1996 amendment to RCW 10.64.025 barring any post-conviction release pending sentencing for certain offenses violate the separation of powers doctrine?
Under RCW 2.06.030, the Commissioner of this court accepted certification of the case on January 6, 1997, and set the matter for determination on the merits.[1]

ANALYSIS

Standard of Review
At issue in this case is a trial court order declaring a statute unconstitutional;
*693 we review such orders de novo. Soundgarden v. Eikenberry, 123 Wash.2d 750, 756, 871 P.2d 1050, 30 A.L.R.5th 869 (1994) (citing Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 499, 104 S.Ct. 1949, 1958, 80 L.Ed.2d 502 (1984)).

Separation of Powers
The separation of powers doctrine is not specifically enunciated in either the Washington or federal constitutions, but is universally recognized as deriving from the tripartite system of government established in both constitutions. See, e.g., Wash. Const. arts. II, III, and IV (establishing the legislative department, the executive, and judiciary); U.S. Const. arts. I, II, and III (defining legislative, executive, and judicial branches); Carrick v. Locke, 125 Wash.2d 129, 134-35, 882 P.2d 173 (1994). When separation of powers challenges are raised involving different branches of state government, only the state constitution is implicated. See Carrick, 125 Wash.2d at 135 n. 1, 882 P.2d 173. However, this court relies on federal principles regarding the separation of powers doctrine in interpreting and applying the state's separation of powers doctrine. Carrick, 125 Wash.2d at 135 n. 1, 882 P.2d 173.
In Carrick, we discussed the purposes and proper application of the separation of powers doctrine:
The validity of this [separation of powers] doctrine does not depend on the branches of government being hermetically sealed off from one another. The different branches must remain partially intertwined if for no other reason than to maintain an effective system of checks and balances, as well as an effective government. In re Juvenile Director, [87 Wash.2d 232, 239-40, 552 P.2d 163 (1976)]. The doctrine serves mainly to ensure that the fundamental functions of each branch remain inviolate.
The separation of powers doctrine is grounded in flexibility and practicality, and rarely will offer a definitive boundary beyond which one branch may not tread. In re Juvenile Director, at 240, 552 P.2d 163.
The question to be asked is not whether two branches of government engage in coinciding activities, but rather whether the activity of one branch threatens the independence or integrity or invades the prerogatives of another.

Zylstra v. Piva, 85 Wash.2d 743, 750, 539 P.2d 823 (1975).
Carrick, 125 Wash.2d at 135, 882 P.2d 173. In Carrick, we held the statute that authorized district court judges to conduct coroners' inquests into deaths involving law enforcement officers, and the actual practice of district courts doing so, did not violate the separation of powers doctrine. Carrick, 125 Wash.2d at 139-40, 882 P.2d 173.
Here, Blilie claims RCW 10.64.025(2) irreconcilably conflicts with CrR 3.2(f) and, therefore, the Legislature has improperly interfered with this court's inherent authority to promulgate rules of procedure. Because release and bail issues have traditionally been functions of the judiciary, this court has treated the issue as procedural rather than substantive, and a proper subject of the court's rulemaking authority. See State v. Smith, 84 Wash.2d 498, 501-02, 527 P.2d 674 (1974). In exercising that authority, we have promulgated rules regarding bail and release of accused persons. See CrR 3.2. In particular, CrR 3.2(f) provides: "After a person has been found or pleaded guilty, and subject to RCW 9.95.062, 9.95.064, 10.64.025, and 10.64.027, the court may revoke, modify, or suspend the terms of release and/or bail previously ordered." The statute at issue here, RCW 10.64.025, states:
(1) A defendant who has been found guilty of a felony and is awaiting sentencing shall be detained unless the court finds by clear and convincing evidence that the defendant is not likely to flee or to pose a danger to the safety of any other person or the community if released....
(2) A defendant who has been found guilty of one of the following offenses shall be detained pending sentencing: Rape in the first or second degree ...; rape of a child in the first, second, or third degree ...; child molestation in the first, second, or third degree ...; sexual misconduct with a minor in the first or second degree ...; indecent liberties ...; incest *694 ...; luring ...; any class A or B felony that is a sexually motivated offense as defined in RCW 9.94A.030; a felony violation of RCW 9.68A.090; or any offense that is, under chapter 9A.28 RCW, a criminal attempt, solicitation, or conspiracy to commit one of those offenses.
RCW 10.64.025. Blilie challenges only subsection (2) of this statute.
When a court rule and procedural statute are inconsistent, the court rule governs; however, this court makes every effort to harmonize such apparent conflicts. State v. Ryan, 103 Wash.2d 165, 178, 691 P.2d 197 (1984); Washington State Bar Ass'n v. State, 125 Wash.2d 901, 909, 890 P.2d 1047 (1995). In Ryan, the defendant challenged the child hearsay statute on the grounds that it was a legislative intrusion into the judicial province in violation of the separation of powers doctrine. Ryan, 103 Wash.2d at 178, 691 P.2d 197. We held there was no violation of that doctrine because (1) there was no conflict between the statute and any court rule, and (2) ER 802 specifically contemplated exceptions created "by statute." Ryan, 103 Wash.2d at 178-79, 691 P.2d 197.
Ryan is directly on point. CrR 3.2(f) recognizes the legislative restrictions imposed by this specific statute on a trial court's discretion to release defendants after findings or pleas of guilty. Furthermore, RCW 10.64.025(2) does not directly conflict with CrR 3.2(f). The court rule provides that "subject to" RCW 10.64.025, the court "may revoke, modify, or suspend the terms of release and/or bail." CrR 3.2(f) (emphasis added). RCW 10.64.025(2) prohibits the release of defendants convicted of certain sex offenses pending sentencing. Rather than conflicting, RCW 10.64.025 is a necessary and contemplated corollary to CrR 3.2(f).
Blilie argues that CrR 3.2(f)'s recognition of RCW 10.64.025 does not include subsection (2) because that section of the statute was added by amendment in 1996, and CrR 3.2(f) was last amended in 1995. CrR 3.2(f); see Laws of 1996, ch. 275, § 10. In essence, Blilie asserts that any statutory amendments adopted subsequent to the court rule must be specifically addressed by this court and then recognized in the rule.
This argument is directly contrary to our recognized rules of statutory construction. Court rules are interpreted using principles of statutory construction. State v. Greenwood, 120 Wash.2d 585, 592, 845 P.2d 971 (1993). Statutes referencing other statutes include any amendments to the referenced statute, absent a clear expression of a contrary intent. State v. Horton, 59 Wash. App. 412, 416, 798 P.2d 813 (1990); RCW 1.12.028. Both the Legislature and this court are presumed to know the rules of statutory construction. See State ex rel. Gebhardt v. Superior Court, 15 Wash.2d 673, 690, 131 P.2d 943 (1942). Applying these recognized principles, CrR 3.2(f) should be read to recognize RCW 10.64.025, including all subsequent amendments to that statute, because there is no express provision in CrR 3.2(f) limiting its recognition of the statute or subsequent amendments.
The addition of subsection (2) to RCW 10.64.025 is a legislative declaration of public policy that persons who are found or have pled guilty to certain sex offenses should not be released pending sentencing. While issues of bail and release fall within the authority of the judicial branch, this court has specifically recognized and requested legislative input on this issue by subjecting CrR 3.2(f) to various statutes. This recognition does not implicate any traditional separation of powers concerns; namely, it is not evidence of an impermissible intrusion by the legislature into "the institutional integrity of the Judicial Branch." Mistretta v. United States, 488 U.S. 361, 383, 109 S.Ct. 647, 660, 102 L.Ed.2d 714 (1989) (quoting Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 851, 106 S.Ct. 3245, 3258, 92 L.Ed.2d 675 (1986)). In keeping with our prior practice, we continue to recognize the validity of legislative regulation in this area; however, we ultimately retain final authority on this matter by virtue of our rulemaking power. See Washington State Bar Ass'n, 125 Wash.2d at 914, 890 P.2d 1047 (Dolliver, J., dissenting). In sum, we hold RCW 10.64.025(2) does not violate the separation of powers doctrine.

Equal Protection
In his reply brief, Blilie argues the trial court erred in not finding RCW *695 10.64.025(2) unconstitutional for violating the equal protection clause.[2] Blilie asserts the statutory distinction between felony sex offenders and all other felony offenders covered by RCW 10.64.025 is "arbitrary and capricious," and violates his right to equal protection of the law. Because Blilie fails to differentiate between the equal protection clause of the Fourteenth Amendment and Wash. Const. art. I, § 12, we base our analysis solely on the Fourteenth Amendment. In re Boot, 130 Wash.2d 553, 572, 925 P.2d 964 (1996).
Under the equal protection clause, persons similarly situated with respect to the purpose of the law must receive similar treatment. State v. Manussier, 129 Wash.2d 652, 672, 921 P.2d 473 (1996), cert. denied, ___ U.S. ___, 117 S.Ct. 1563, 137 L.Ed.2d 709 (1997). When neither a suspect class, semi-suspect class, or fundamental right is at issue in an equal protection challenge, the rational relationship test applies. Boot, 130 Wash.2d at 573, 925 P.2d 964; Manussier, 129 Wash.2d at 673, 921 P.2d 473. This court has held, and Blilie concedes, there is no constitutional right (i.e., fundamental right) to bail pending appeal. Smith, 84 Wash.2d at 499, 527 P.2d 674. Additionally, when physical liberty is the sole interest involved in a statutory classification, the rational relationship test applies. Manussier, 129 Wash.2d at 673, 921 P.2d 473. Therefore, the rational relationship test applies to Blilie's equal protection challenge to RCW 10.64.025(2).
We have defined the rational relationship test as follows:
The rational relationship test is the most relaxed and tolerant form of judicial scrutiny under the equal protection clause. Under this test, the legislative classification will be upheld unless it rests on grounds wholly irrelevant to achievement of legitimate state objectives. The burden of proving the legislative classification unconstitutional is upon the party challenging the legislation. That party has the heavy burden of overcoming a presumption that the statute is constitutional.
State v. Shawn P., 122 Wash.2d 553, 561, 859 P.2d 1220 (1993) (citations omitted).
As stated above, Blilie argues it is arbitrary and capricious to distinguish between felony sex offenders and other felony offenders for purposes of release or bail pending sentencing. We have previously recognized classifications based on conviction for a sex offense as valid under the equal protection clause. See State v. Ward, 123 Wash.2d 488, 516-17, 869 P.2d 1062 (1994) (classifications in RCW 9A.44.130(3) for sex offender registration do not violate equal protection guaranties). We recognize that the Legislature has broad discretion to determine the public interest and what measures are necessary to secure that interest.[3]Ward, 123 Wash.2d at 516, 869 P.2d 1062. Here, the Legislature's legitimate objective was to protect citizens from sex offenders and their perceived high risk of reoffense. Laws of 1996, ch. 275, § 1; see Laws of 1990, ch. 3 (Community Protection Act of 1990); Ward, 123 Wash.2d 488, 869 P.2d 1062 (interpreting Laws of 1990, ch. 3, § 401). Requiring immediate detention of persons convicted of felony sex offenses is rationally related to the legitimate objective of protecting the public from reoffense by sex offenders. RCW 10.64.025 passes the rational relationship test.

CONCLUSION
Blilie has failed to demonstrate that RCW 10.64.025(2) violates the separation of powers doctrine of the Washington Constitution or *696 the equal protection clause of the Fourteenth Amendment. The order of the trial court is reversed.
DURHAM, C.J., and DOLLIVER, SMITH, ALEXANDER and TALMADGE, JJ., concur.
MADSEN, Justice, (dissenting),
The majority opinion mistakenly applies a rule of construction found in RCW 1.12.028 to conclude that subsequent amendments to RCW 10.64.025 are included within CrR 3.2(f). That rule of construction applies by its express terms only to statutes in this state referencing other Washington statutes. It is inapplicable to this court's rules. The consequences of the majority's analysis could not be more significant. Because the majority incorrectly concludes that a subsequent amendment to RCW 10.64.025 is within the reference to that statute in the court rule, it unjustifiably concedes its judicial power to the Legislature.
As the majority states, the court applies rules of statutory construction in construing the court rules. CrR 3.2(f) expressly incorporates several statutes by specific reference, including RCW 10.64.025. Thus, for purposes of applying rules of statutory construction, CrR 3.2(f) is the equivalent of a "reference statute." "Reference statutes" are statutes "which refer to, and by reference adopt wholly or partially, preexisting statutes or which refer to other statutes and make them applicable to an existing subject of legislation. They are frequently used to avoid encumbering the statute books by unnecessary repetition...." Knowles v. Holly, 82 Wash.2d 694, 700, 513 P.2d 18 (1973).
Two kinds of reference statutes are recognized. A reference statute may specifically reference an existing statute in whole or in part. CrR 3.2(f) is like this kind of reference statute because it specifically incorporates four discrete statutes by reference. In contrast, the second kind of reference statute does not incorporate a specific statute, but instead refers to the general law governing a subject. An example of this type of reference statute was addressed in an early case, Corkery v. Hinkle, 125 Wash. 671, 217 P. 47 (1923), where the statute referenced general law when providing that in a special election in the event of a vacancy, "`[t]he general election laws and the laws relating to primary elections shall apply to the special elections herein provided for....'" Id. at 672, 217 P. 47 (citation omitted).
The distinction between the two types of reference statutes is crucial when construing them in light of subsequent amendments. Where a specific reference statute is concerned, as in this case, only the statute existing at the time of incorporation is incorporated and subsequent amendments to the incorporated statute do not become a part of a specific reference statute. Chelan County v. Navarre, 38 Wash. 684, 688, 80 P. 845 (1905); see 2B Norman J. Singer, Sutherland's Statutory Construction §§ 51.07, 51.08 (5th ed.1992); 73 Am.Jur.2d Statutes § 29 (1974). On the other hand, when a reference statute incorporates the general law on a subject, amendments to the incorporated statute do become a part of the incorporating statute. Chelan County, 38 Wash. at 688, 80 P. 845, 2B Singer, supra, §§ 51.07, 51.08; 73 Am Jur.2d § 29. Thus, in Corkery, later enacted statutes pertaining to absentee voting became a part of the special election law.
Under these well established rules of statutory construction, subsequent amendments to RCW 10.64.025 do not become a part of CrR 3.2(f).
The majority, however, relies upon RCW 1.12.028 and one case citing that statute for a rule of statutory construction that simply does not apply in this case. RCW 1.12.028, enacted in 1982, Laws of 1982, ch. 16, § 1, states that "[i]f a statute refers to another statute of this state, the reference includes any amendments to the referenced statute unless a contrary intent is clearly expressed." (Emphasis added.) As numerous jurisdictions recognize, a specific reference statute may be construed to incorporate later amendments, contrary to the general rule of statutory construction, provided that there is indisputable legislative intent that later changes in the incorporated law are to become part of the reference statute. "A statute of specific reference incorporates the *697 provisions referred to from the statute as of the time of adoption without subsequent amendments, unless the legislature has expressly or by strong implication shown its intention to incorporate subsequent amendments with the statute." 2B Singer, supra, § 51.08 (emphasis added and footnote omitted); see Jeanelle R. Robson, Note, "Lazarus Come Forth. And He That Was Dead Came Forth." An Examination of the Lazarus Rule: Fisher v. City of Grand Island, 26 Creighton L.Rev. 221, 231-32, & 231 n. 97 (1992) (and cases cited therein).
By enacting RCW 1.12.028, the Legislature expressed its intent that certain referencing statutes incorporate subsequent amendments even when they are statutes of specific reference.
However, while RCW 1.12.028 specifically shows legislative intent to override the general rule that later amendments are not incorporated in specific reference statutes, it says absolutely nothing, and can say absolutely nothing, about the intent of an entirely separate branch of governmentthe judiciary. Further, RCW 1.12.028 is not a statutory rule of statutory construction which applies each and every time a reference to another statute is made. By its express terms it does not, for example, apply to state statutes referencing federal statutes.
Thus, RCW 1.12.028 is not even an expression of legislative intent as to all referencing statutes. Much more importantly, it is clearly not a statement of this court's intent.
RCW 1.12.028 does not apply. There is no indication that when incorporating RCW 10.25.064 this court intended that any and all later amendments be incorporated. If a rule of statutory construction is to be applied, it is the general rule set out in Chelan County and recognized in the leading treatises. CrR 3.2(f)'s reference to RCW 10.64.025 is a specific reference, and under the general rule of construction the inclusion of RCW 10.64.025 is of the statute as it existed when it was incorporated, and not an inclusion of any later amendments. Thus, CrR 3.2(f) does not incorporate RCW 10.64.025(2) by reference.
I agree with the majority that issues of bail and release are matters within the authority of the judicial branch, and that this court retains final authority over these matters by virtue of the court's rulemaking authority. RCW 10.64.025(2) conflicts with CrR 3.2(f). The conflict cannot be harmonized. Accordingly, the court rule prevails. Washington State Bar Ass'n v. State, 125 Wash.2d 901, 909, 890 P.2d 1047 (1995).
GUY and SANDERS, JJ., concur.
NOTES
[1] At oral argument, counsel for the State told the court that Blilie has now been sentenced; therefore, the case may technically be moot because Blilie cannot receive the relief of being released pending sentencing. However, Blilie is not the appellant and we can still grant the relief requested by the State, namely, reversing the trial court order finding RCW 10.64.025(2) unconstitutional. Therefore, we choose to resolve this issue, regardless of whether it is moot, because it is a public issue, requiring an authoritative determination in order to provide guidance to our lower courts, and the issue will frequently recur. See Sorenson v. City of Bellingham, 80 Wash.2d 547, 558, 496 P.2d 512 (1972) (setting forth the rule for determining when moot issues can be decided on appeal).
[2] Blilie also cites the due process clause as a basis for finding RCW 10.64.025 unconstitutional. However, he fails to undertake any analysis under the due process clause. Therefore, we do not address the due process clause because, as we have often stated: "`[N]aked castings into the constitutional sea are not sufficient to command judicial consideration and discussion.'" In re Rosier, 105 Wash.2d 606, 616, 717 P.2d 1353 (1986) (quoting United States v. Phillips, 433 F.2d 1364, 1366 (8th Cir.1970)).
[3] While we may not agree with the Legislature's determination of how to protect the public interest, and its resulting inequities and impracticalities, that determination is properly within the Legislature's province. As mentioned above, our authority in this matter resides in our rulemaking authority, and the remedy, should we disagree with the method mandated by the Legislature, is to amend our court rules.